**EMPLOYERS INSURANCE OF WAUSAU, Plaintiff–Appellant,**

v.

**BODI–WACHS AVIATION INSURANCE AGENCY, INC., an Illinois corporation, Robert West and Bernadine West, Defendants–Appellees.**

No. 94–1789.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1994.

Decided Oct. 26, 1994.

---

Robert M. Chemers, Donald J. Kindwald, David B. Gelman (argued), Pretzel & Stouffer, Chicago, IL, for Employers Ins. Co. of Wausau.

Alan R. Dolinko (argued), Cary S. Fleischer, Chuhak & Tecson, Chicago, for Bodi–Wachs Aviation Ins. Agency, Inc.

Richard R. Haldeman, Haldeman & Associates, Rockford, Harold L. Turner, Turner & McGraw, Rockford, for Robert West and Bernadine West.

Before COFFEY, and ROVNER, Circuit Judges, and FOREMAN, District Judge.*

FOREMAN, District Judge.

Employers Insurance of Wausau appeals from the district court's judgment holding Employers liable under an errors and omissions insurance policy issued to the Bodi–Wachs Aviation Insurance Agency, 846 F.Supp. 677. Because we find that the district court properly interpreted the terms of the policy, we affirm.

## I. FACTS

After Robert West was injured in a helicopter crash on March 22, 1989, he and his wife, Bernadine, brought a declaratory judgment action against the helicopter company and various insurance agencies to determine the coverage limits of the company's liability insurance policy. They alleged that prior to the accident, the insurance policy provided a $5 million single limit of liability, including passenger liability, but that the policy was improperly modified after Mr. West's accident to reduce the amount of coverage for passengers from $5 million to $100,000 for each passenger.

Although the new policy was issued on March 27, 1989, it provided for an effective date of March 20, 1989. The Wests alleged that the policy was modified with full knowledge of the March 22, 1989, accident. They further alleged that the defendants knew that the modifications were contrary to the contract between the helicopter company, Eagle Air Helicopters, Inc., and West's employer, Commonwealth Edison Company, which required Eagle Air to maintain liability insurance of $5 million.

Bodi–Wachs Aviation Insurance Agency was one of the insurers named in the West lawsuit, which was filed in February 1992 and served sometime in late February to early March 1992. Bodi–Wachs apparently had acted as Eagle Air's agent in obtaining insurance from TransAmerica Insurance through Southern Marine and Aviation Underwriters. However, the Wests' original complaint did not expressly seek relief from Bodi–Wachs, but instead requested a declaratory judgment that: (1) the TransAmerica policy provided $5 million in coverage for bodily injury or property damage; (2) the attempt by the defendants to issue a policy with a $100,000 limit was ineffective; (3) that the $100,000 coverage limit provided $100,000 in coverage for Robert West as well as $100,000 for Bernadine West's loss of consortium claim; and (4) "for such other and further relief as the Court deems fit and proper." Bodi–Wachs, therefore, filed a motion to dismiss, arguing that it could not be affected by the relief sought in the case.

The Wests responded to the motion by seeking leave to amend their complaint to add a count against Bodi–Wachs pursuant to Illinois Supreme Court Rule 224, which provides that: "A person or entity who wishes to engage in discovery for the sole purpose of ascertaining the identity of one who may be responsible in damages may file an independent action for such discovery." Ill.Sup.

---

\* Hon. James L. Foreman, of the Southern District of Illinois, is sitting by designation.

Ct.R. 224. Accordingly, the state court judge ordered Bodi & Wachs to comply with a subpoena issued by the Wests.

Counsel for the Wests subsequently sent a letter to counsel for Bodi–Wachs in April 1992, stating: "I wish to alert you that the errors and omissions carrier for Bodi–Wachs is potentially involved." In support of this potential allegation, the letter referred to specific portions of the original complaint which alleged generally that *all* of the defendants knew that the owners/operators of the helicopter were required, under a contract with Commonwealth Edison, to maintain an insurance policy for $5 million on the helicopter and *all* of them knew that the policy had been renewed for only $100,000. The letter stated that the prayer for relief—apparently the request for "such other and further relief"—includes "the potential of a negligence claim against Bodi & Wachs." Thus, the letter suggested that "[i]t is in the best interest of Bodi & Wachs to alert the errors and omissions carrier as to this potential claim so as not to lose coverage."

The plaintiffs did not immediately amend their complaint but instead continued with discovery. Several depositions were taken with Jay Bodi, half-owner of Bodi–Wachs, in November 1992. During one of these depositions, the plaintiffs' counsel asked whether Bodi & Wachs had errors and omissions insurance coverage. The Wests' counsel then told Bodi and his counsel that it was likely that the Wests would file an amended complaint seeking damages against Bodi–Wachs. In January 1993, plaintiffs' counsel "stated affirmatively that they were going to articulate a claim of some type" against Bodi–Wachs or Mr. Bodi by an amended pleading in the near future. An amended pleading was in fact filed on March 19, 1993, containing counts for fraud and negligence against Bodi–Wachs and seeking up to $5 million in monetary damages.

During the period of August 4, 1991, to August 4, 1992, Bodi–Wachs had errors and omissions insurance coverage under a policy issued by General Insurance Company of America (Safeco). However, from August 4, 1992, to August 4, 1993, coverage was provided by Employers Insurance of Wausau.

Bodi–Wachs did not notify either insurer about the West lawsuit until December 28, 1992, when it sent a letter to Employers stating the following:

> [T]here is currently a lawsuit pending in the Circuit Court of the 17th Judicial Circuit, Winnebago County, Illinois, captioned *West v. Eagle Air Helicopters, Inc.*, No. 92 MR 23. At the present time, Bodi & Wachs Aviation Insurance has been named as a party in this litigation only for purposes of obtaining discovery from Bodi & Wachs Aviation; no claim for monetary relief has been asserted against Bodi & Wachs in this matter.

> Nevertheless, as a result of developments which have occurred in this litigation, including the recent deposition of Mr. Bodi, pursuant to policy paragraph XI 3., "Notice of Claim or Suit," we wish to bring this matter to your attention. As stated, no claim has yet been asserted against Bodi & Wachs. However, should a claim be asserted against Bodi & Wachs in the future, Bodi & Wachs would tender this claim to you and expect full coverage in accordance with the above identified policy. If you believe this matter should be tendered to the company at the present time, please let us know and we will be happy to comply with any obligations under the policy.

Employers denied coverage and brought the pending declaratory judgment action in April 1993 to determine whether it was obligated to indemnify and/or defend Bodi–Wachs in the underlying action. Employers' argument rests primarily upon the fact that coverage was provided under a "claims made" policy. Part III of the policy states:

> This policy applies only to claims for which coverage is provided hereunder and then only where such covered claim is first made and reported to the Company during the policy period or during the policy periods of consecutive renewal policies issued by the Company or, if applicable, during the discovery period.

> A claim for injury shall be considered as being first made at the earlier of the following times:

A. When claim is first made against the insured for injury, or

B. When notice is first given to the Company by or on behalf of the insured of specific circumstances involving a particular person or organization which may result in a claim for injury.

The policy contains certain notice provisions in Part X, which states:

3. NOTICE OF CLAIM OR SUIT. In the event of any circumstance likely to result in a claim to which this insurance applies, written notice shall be given by or on behalf of the Insured to the Company as soon as practicable. If thereafter any suit or other proceeding is instituted against the Insured, the Insured shall immediately inform the Company in like manner. The Insured shall upon request furnish the Company with investigations, pleadings and all other papers relating to such suit or proceedings.

The policy definition of a "claim" states: " 'Claim' shall include all claims or suits for damages arising out of the same negligent act, error or omission of one or more of the Insureds." The definition for "damages" states: " 'Damages' means monetary judgment, award or settlement including compensatory, punitive or exemplary damages but does not include fines or penalties or damages for which insurance is prohibited by the applicable law." [1]

Employers argued that its policy did not cover the Wests' lawsuit because the Wests' claim was made prior to August 4, 1992, when the Employers policy period began. Employers contends that the *West* action constituted a claim when the lawsuit was first filed in February 1992 or, at the very latest,

when the plaintiff's counsel sent the letter in April 1992 advising Bodi–Wachs to put its errors and omissions carrier on notice. Employers further argued that Bodi–Wachs did not comply with the requirement of immediate notice because the latter did not give notice until December 1992 despite the fact that it was aware of the lawsuit when it was served in February or March 1992.

The district court rejected both arguments. The court held that the policy required Bodi–Wachs to give notice only when there was an actual claim for money damages. Here, the original suit did not seek money damages and the April letter from Wests' counsel merely suggested the "potential" for a subsequent money damages claim. That claim was still only "likely" when Bodi's deposition was taken in November 1992 and was not actually filed until March 1993. Thus, the court found that the claim was first made against Bodi–Wachs in March 1993, and Bodi–Wachs complied with the policy's notice provision by immediately giving notice of the claim.

Based upon this analysis, the district court entered summary judgment in favor of Bodi–Wachs, finding that the Employers policy provided coverage for the claim. Accordingly, the court held that Employers was obligated to defend Bodi–Wachs in the West action and was obligated to pay any sums that Bodi–Wachs would be obligated to pay to the Wests as damages because of Bodi–Wachs's negligent acts, errors or omissions. Employers appeals from that judgment.

## II. ANALYSIS

■ Under Illinois law,[2] the interpretation of an insurance policy is a question of law.

1. The policy also contains certain exclusionary provisions in Part II. The only exclusion potentially applicable in this case is II(E), which states: "This insurance does not apply to any claims: ... arising out of acts, errors or omissions known by the Insured at the original first inception date of a policy or policies of this Company which provide uninterrupted coverage...." We need not consider the impact of this provision, however, because Employers did not rely on this section in its arguments before the district court and, therefore, has waived any claim based upon this provision. See Dist. Court op. at 13 n. 6.

2. The parties argued only Illinois law in their submissions to the district court. Because the parties did not raise a choice of law issue, the district court properly based its decision upon Illinois law regarding the interpretation of insurance policies. *See Wood v. Mid–Valley, Inc.*, 942 F.2d 425, 426 (7th Cir.1991) ("when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.").

*Crum and Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill.2d 384, 391, 189 Ill.Dec. 756, 760, 620 N.E.2d 1073, 1077 (1993). "Where a policy provision is clear and unambiguous, its language must be taken in its 'plain, ordinary and popular sense.' ... All doubts and ambiguities must be resolved in favor of the insured." *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.,* 144 Ill.2d 64, 74, 161 Ill.Dec. 280, 284, 578 N.E.2d 926, 930 (1991). Our standard of review of a district court's grant of summary judgment is de novo. *Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 663 (7th Cir.1992).

■ Employers argues that its policy does not cover the claim made by the Wests because the claim was made sometime between February and April 1992, which was several months before the Employers policy took effect. Employers argues that the term "claim" is commonly defined as: "To demand as one's own or as one's right; to assert; to urge; to insist. Cause of action. Means by or through which claimant obtains possession or enjoyment of privilege or thing. Demand for money or property, e.g., insurance claim." *Black's Law Dictionary* 224 (5th ed. 1979). Thus Employers argues that the Wests' original complaint for declaratory judgment constitutes a claim because it was an assertion of a right to certain insurance funds.

What Employers fails to recognize, however, is that the Wests' original complaint related only to the proceeds of the insurance policy issued by TransAmerica. Accordingly, the suit could be construed as a "cause of action" or "means by or through which claimant obtains possession or enjoyment" of monetary benefits under the insurance policy—but only against TransAmerica. The complaint did not seek any damages or payments from Bodi–Wachs. In fact, based upon the plaintiffs' first motion to amend the complaint, it is clear that Bodi–Wachs was named only for purposes of discovery at that time.

Employers argues in the alternative that the Wests asserted a claim when their attorney sent the April 1992 letter to Bodi–Wachs stating that the original complaint includes "the potential of a negligence claim against Bodi & Wachs." We disagree. This letter, at best, indicates that the plaintiffs were investigating the possibility that Bodi–Wachs had been negligent. The letter does not constitute a clear demand for damages but merely notice that a demand may be made in the future.

Employers relies heavily upon a recent decision from this court in a similar action involving insurance coverage. In *National Union Fire Ins. Co. v. Baker & McKenzie,* 997 F.2d 305 (7th Cir.1993), the law firm of Baker & McKenzie was insured under a professional liability insurance policy provided by National Union. In September 1987, the Federal Deposit Insurance Corporation sent letters to three members of the law firm regarding a failed savings and loan association. The letters were captioned "Notice of Claims" and expressly stated that the FDIC intended to seek to recover from the lawyers the losses sustained by the failed savings and loan association.

The lawyers gave copies of the letters to members of the executive committee at Baker & McKenzie. However, the committee apparently concluded that the National Union insurance policy would not cover the losses because the three lawyers had been employed by another law firm at the time of their alleged misconduct involving the savings and loan association. Therefore, Baker & McKenzie did not immediately notify National Union about the potential claim, but waited until May 2, 1989, after the FDIC had requested one of the three lawyers to furnish a copy of Baker & McKenzie's professional liability insurance policy. During the interim, the insurance policy that was in effect at the time the lawyers first received the letters had expired but was renewed on substantially the same terms for another year.

The FDIC finally filed its suit against the three lawyers in March 1990. Two months before that date, National Union had filed its own action seeking a declaratory judgment that its policy did not cover the claim against the lawyers. It argued that the claim had not been first made and reported during the first insurance policy period, as required by the policy.

Similar to the policy at issue in this lawsuit, the National Union policy stated that a claim is first made during the policy period if, during that period, either "a claim alleges damages which are payable under this policy" or the insured "shall have knowledge or become aware of any act, error or omission which could reasonably be expected to give rise to a claim under this policy and shall during the policy period ... give written notice thereof to the Company" even if the actual claim is made after the period has expired.

*Id.* at 306. In other words, an actual claim is distinguished from an "event" which could give rise to an actual claim in the future. Obviously if an actual claim is made, the insured must report the claim during that same policy period. However, when a claim falls under the second category—i.e., it is not an actual claim but "merely the reasonable expectation of a future claim"—the insured has a choice of either (1) accelerating the claim to the current policy period by giving notice to the insurance company during that period, or (2) waiting until an actual claim is filed and relying on the insurance coverage in effect at that time. *Id.* at 307–08.

In ruling in favor of National Union, the decision stated that "[w]e should have thought that the letter [sent to the Baker & McKenzie lawyers] fitted the policy's definition of a claim comfortably[.]" *Id.* at 308. However, this observation was purely dictum because the decision goes on to state that National Union did not argue that point; instead, National Union contended that the letter informed Baker & McKenzie of an "event ... that could reasonably be expected to precipitate a claim under the policy ... sometime in the future." *Id.* The decision found it plain that the letter did place Baker & McKenzie on notice of an impending claim. Therefore, Baker & McKenzie was required to report the event to the insurance company during that policy period if the law firm wanted coverage under that current period.

The *National Union* case is distinguishable from the case at bar for several reasons. First, the *National Union* decision turns upon Baker & McKenzie's failure to report an "event" that could give rise to a potential claim. Employers, on the other hand, has attempted to argue that the Wests' original lawsuit and the April 1992 correspondence constitute an actual claim, as opposed to an event that is reasonably expected to precipitate an actual claim sometime in the future.

Secondly, although the *National Union* decision suggests that the letter to the Baker & McKenzie lawyers could be construed as an actual claim, and not merely an event that could give rise to a later claim, this statement is dictum and not binding upon the case at bar. Moreover, even if the *National Union* decision had clearly held that the letter constituted an actual claim, there are significant differences between that letter and the documents which Employers relies upon in this case. Aside from the fact that the Baker & McKenzie letter was captioned as "Notice of Claims," the letter goes on to express a clear intent to seek to recover damages from the three lawyers. In contrast, the Wests' original complaint gave no hint whatsoever that the Wests intended to seek money damages from Bodi–Wachs and the April 1992 letter provided notice only of the "potential" for a claim sometime in the future. Neither can be characterized as an actual demand or claim.

Under the facts of this case, therefore, it is clear that the Wests made their actual claim against Bodi–Wachs in March 1993 when they filed the amended complaint that alleged, for the first time, fraud and negligence counts against Bodi–Wachs and sought up to $5 million in monetary damages. Accordingly, under the terms of the Employers policy, Bodi–Wachs was required to give notice immediately after that amended complaint was filed.

Employers argues that Bodi–Wachs should have given notice immediately after the February 1992 lawsuit was filed. However, for the reasons discussed above, the February 1992 suit was not for money damages and, therefore, did not constitute an actual claim against Bodi–Wachs that would trigger the notice provision. Moreover, as the district court pointed out, Employers was not Bodi–Wach's insurer at the time the February 1992 lawsuit was filed. Thus, Bodi–Wachs

could not have provided notice to Employers at that time.[3]

## III. SUMMARY

Based upon the foregoing analysis, the district court correctly held that the Employers Insurance of Wausau policy provided coverage for the claim made by Robert and Bernadine West against Bodi–Wachs Aviation Insurance Agency. The claim was first made when the Wests amended their lawsuit in February 1993 to add monetary damages claims of fraud and negligence against Bodi–Wachs. There is no dispute that Bodi–Wachs gave notice immediately after that amended pleading was filed. Therefore, the claim was first made and reported during the policy period. Accordingly, the district court properly held that Employers was obligated to defend Bodi–Wachs in the West action and was obligated to pay any sums that Bodi–Wachs would be obligated to pay to the Wests as damages because of Bodi–Wachs's negligent acts, errors or omissions. The district court's judgment is therefore

AFFIRMED.

---

3. As set forth above, the notice provision requires written notice as soon as practicable after "the event of any circumstance likely to result in a claim" and that the insured "immediately inform the Company" if any suit or other proceeding is instituted against the insured thereafter. Arguably, the February 1992 lawsuit and April 1992 letter might demonstrate that there were circumstances likely to give rise to a claim against Bodi–Wachs. Thus, there could be a question as to whether Bodi–Wachs had given notice as soon as practicable. However, as the district court points out, Employers did not raise this issue in its briefs on the cross-motions for summary judgment.

Moreover, as the district court points out, the term "likely to result in a claim" has been held to vest in the insured discretion in determining when an insurer must be given notice. See Hartford Accident & Indem. Co. v. Rush–Presbyterian– St. Luke's Medical Ctr., 231 Ill.App.3d 143, 150–51, 172 Ill.Dec. 641, 646, 595 N.E.2d 1311, 1316 (1st Dist.1992); Imperial Casualty & Indem. Co. v. Chicago Housing Auth., 987 F.2d 459, 462 (7th Cir.1993). The factors relevant to whether the insured abused that discretion are: (1) when the insured "reasonably determined that the probability existed" that the policy's coverage would be implicated and (2) "whether the insurer has been prejudiced by the timing of the notice" received from the insured. Hartford, 231 Ill. App.3d at 151, 172 Ill.Dec. at 646, 595 N.E.2d at 1316. Although the Wests' counsel had spoken of a "potential" negligence claim in April 1992, it wasn't until November 1992 that counsel indicated that it was "likely" that the Wests would file an amended complaint seeking damages against Bodi–Wachs. Bodi–Wachs gave notice within a month after this conversation with Wests' counsel.