United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 7, 2004**

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 29, 2004

In the

# United States Court of Appeals
# for the Fifth Circuit

_____

m 04-50110
Summary Calendar

_____

SINGLEENTRY.COM, INC.,

Plaintiff-Appellant,

VERSUS

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
m A-03-CV-94-SS

_____

Before DAVIS, SMITH, and DENNIS,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

SingleEntry.com, Inc. ("SingleEntry"), appeals a summary summary judgment in favor of St. Paul Fire and Marine Insurance Company ("St. Paul"). SingleEntry, as assignee of ThinkSpark Corporation's rights, contends that ThinkSpark provided notice of a claim within its policy period under a claims-made technology errors and omissions policy. In addition, SingleEntry avers that St. Paul is required to show prejudice for failure to provide notice and was required to provide a defense to ThinkSpark under article 21.55 of the Texas Insurance Code. We affirm.

## I.

St. Paul issued ThinkSpark a claims-made technology errors and omissions policy covering the period from November 9, 2000, to November 9, 2001. SingleEntry hired ThinkSpark to design and build a website. In the spring of 2000, a dispute arose between SingleEntry and ThinkSpark. SingleEntry sued ThinkSpark on December 5, 2000, alleging fraud, breach of contract, violations of the Texas Deceptive Trade Practices Act, and an alternative claim for negligent misrepresentation.

ThinkSpark knew of the litigation no later than December 7, 2000, but did not inform St. Paul until September 18, 2001, when ThinkSpark's insurance broker sent St. Paul a copy of the petition. SingleEntry and ThinkSpark

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set fort in 5TH CIR. R. 47.5.4.

submitted their dispute to arbitration, and on August 7, 2002, SingleEntry obtained an arbitration award against ThinkSpark.

St. Paul denied coverage to ThinkSpark for the claims assert ed by SingleEntry in the underlying litigation. On February 11, 2003, the state court ordered a turnover that assigned ThinkSpark's claims against St. Paul to SingleEntry, which then sued St. Paul, alleging status as an assignee and judgment creditor or third-party beneficiary of the policy and seeking indemnification under the policy. St. Paul removed to federal court on the basis of diversity jurisdiction.

SingleEntry and St. Paul filed cross-motions for summary judgment on the legal question whether the provision in the policy that required ThinkSpark to notify St. Paul of a loss "as soon as possible" is a mandatory notice requirement and therefore a condition precedent to coverage. The district court denied Single-Entry's motion for partial summary judgment and granted St. Paul's cross-motion for summary judgment, determining that ThinkSpark had failed to comply with the notice requirements.

## II.

An assignee steps into the shoes of the assignor and takes the assigned rights subject to all defenses that an opposing party might be able to assert against the assignor. *Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App.SSHouston [14th Dist.] 2001). A third-party beneficiary judgment creditor of the insured steps into the shoes of the insured. *State Farm Lloyds Ins. Co. v. Maldonado*, 963 S.W.2d 38, 40 (Tex. 1998). The judgment creditor must show that the insured complied with the conditions precedent and terms of the policy. *Id.*

When interpreting an insurance policy under Texas law, a court must construe ambiguities against the insurer and in favor of the insured. *Nat'l Union Fire Ins. Co. v. Willis*, 296 F.3d 336, 339 (5th Cir. 2002). The primary goal is to give effect to the written expression of the parties' intent. *Id.* This is necessary to ensure that the interpretation of the policy will give effect to each term in the contract so that none will be rendered meaningless. *Id.* An insurance policy will be considered ambiguous if, when considered as a whole, it is reasonably susceptible to more than one meaning. *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 657 (5th Cir. 1999) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)). A court should not strain to find ambiguities that may defeat the parties' probable intention. *Id.* Furthermore, an insurance contract will be given its certain legal meaning or interpretation if possible. *Id.*

The terms in an insurance contract are given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense. *New Era of Networks, Inc. v. Great N. Ins. Co.*, 2003 WL 23573645, at *8 (S.D. Tex. 2003) (citing *Am. States Ins. Co. v. Hanson Indus.*, 873 F. Supp. 17, 22 (S.D. Tex. 1995)). The purpose of a notice requirement is to enable the insurer to investigate the circumstances of an accident while the matter is fresh in the minds of the witnesses so that it may adequately prepare to adjust or defend any claims that may be then or thereafter be asserted against persons covered by its policy. *Id.* (citing *Employers Casualty Co. v. Glens Falls Ins. Co.*, 484 S.W.2d 570, 575 (Tex. 1972); *Bay Elec. Supply, Inc. v. Travelers Lloyds Ins. Co.*, 61 F. Supp. 2d 611, 619 (S.D. Tex. 1999)).

Compliance with the provision that notice be given as soon as practicable is a condition precedent, the breach of which voids policy coverage. *Id.* (citing *Broussard v. Lumbermens Mut. Cas. Co.*, 582 S.W.2d 261, 2662 (Tex. App.SSBeaumont 1979); *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 866 (Tex. App.SSCorpus Christi 1998). Accordingly, "failure to give timely notice is a breach of the insurance contract and relieves the insurer of its obligation to defend or indemnify. *Id.* (citing *Assicurazioni Generali SpA v. Pipe Line Valve Specialties Co.*, 935 F. Supp 879, 887 (S.D. Tex. 1996)). Where an insurance policy requires notification of an occurrence or a lawsuit as soon as practicable or immediately, courts must consider the reasonableness of a delay in notification if the facts are undisputed. *Id.* Notice requirements are strictly interpreted, because the parties specifically negotiate them. *Matador*, 174 F.3d at 657.

A claims-made policy is distinguishable from an occurrence policy, where an occurrence during the policy triggers coverage. *Id.* Alternatively, under a claims-made policy, providing notice triggers the insured's coverage. *Id.* An insurer is not required to show prejudice from late notice where a claims-made policy is involved. *Id.* at 659. Courts will not rewrite policies to permit notice-prejudice to be applied to claims-made policies, because to do so would interfere with the right to contract. *Id.* A party rightly should be held to know the conditions of the policy and the conscious choice that it made in selecting a claims-made policy instead of an occurrence policy. *Hirsch v. Tex. Lawyers Ins. Exch.*, 808 S.W.2d 561, 565 (Tex. App.SSEl Paso 1991, wrti denied). Therefore, the failure to provide proper notice under a claims-made policy negates coverage, regardless of whether

the insurer has been prejudiced. *Id.* A showing of prejudice is required only in narrowly defined cases involving bodily injury and property damage. *Dairyland County Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 157 n.2 (Tex. 1973).

The instant policy sets forth definite requirements with which ThinkSpark must comply to secure coverage. Under the policy section titled "When this Policy Provides Liability Protection," the policy states: "If an accident, error, event, offense, or wrongful act happens that may involve liability protection provided in this policy, you or any other protected person involved must tell us or our agent what happened as soon as possible." ThinkSpark, however, did not notify St. Paul until nine months after SingleEntry had filed suit.

In addition, ThinkSpark did not give notice to St. Paul when SingleEntry failed to pay over $219,952 worth of invoices on May 9, 2000. Also, in June 2000, ThinkSpark referred the controversy with SingleEntry to an attorney, and its chief financial officer predicted that the dispute would result in litigation. St. Paul's policy states that "it is reasonable that a protected person could foresee a claim or suit being made or brought if one of your customers refused to pay all or part of your charges for those products or services." Consequently, the actual period of time during which ThinkSpark failed to notify St. Paul is actually much longer than nine months.

Analogously, there is ample Texas authority that taking eleven months to notify an insurer is not "as soon as practicable." *Chicago Ins. Co. v. W. World Ins. Co.*, 1998 WL 51363, at *3 (N.D. Tex. 1998). Therefore, the district court correctly found that ThinkSpark failed to fulfill the notice requirement of the policy.

The terms and conditions of the policy demonstrate that this notice requirement was meant to be a condition precedent. Accordingly, because SingleEntry took the assigned rights from ThinkSpark subject to all the defenses St. Paul is able to assert, the district court properly granted St. Paul's cross-motion for summary judgment.

III.

SingleEntry's assertion that notice was provided before the expiration of the policy is unavailing. The policy specifically mandated that notice be provided "as soon as possible." Therefore, under Texas law, ThinkSpark's delay of notification from May 2000 until December 2001 fails to fulfill the condition precedent of providing notice. Moreover, although SingleEntry repeatedly cites the language of the policy stating that "failure to comply could affect coverage," this language must be read along with the requirement that notice must be given "as soon as possible." Accordingly, St. Paul was properly granted summary judgment on SingleEntry's suit as the assignee of ThinkSpark's claim.

St. Paul also defends SingleEntry's claims by noting that the policy did not cover the dispute that arose between ThinkSpark and SingleEntry. Specifically, the policy states that "[w]e won't cover loss that results from any delay in delivery of, or failure to deliver your computer or electronic products or services." The dispute between SingleEntry and ThinkSpark arose because ThinkSpark failed to complete the requested website for SingleEntry by the deadline of May 1, 2000.

We affirm based on ThinkSpark's failure to fulfill the condition precedent of providing notice to St. Paul "as soon as possible." This decision, moreover, is bolstered by the conclu-

4

sion that the claim was not covered by the policy. Therefore, summary judgment was properly awarded because SingleEntry, as assignee, is subject to all defenses St. Paul may raise against ThinkSpark.

IV.

SingleEntry argue that in Texas, for there to be a condition precedent, terms such as "if" or "provided that" or "on condition that" normally must be used. *Criswell v. European Crossroads Shopping Ctr. Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). Furthermore, Single-Entry tries to distinguish *Fed. Ins. Co. v. CompUSA*, 319 F.3d 746, 748 (5th Cir. 2003), because the contract in that case stated that "the insured shall, as a condition precedent to exercising their rights" give written notice. Therefore, SingleEntry contends that the language "condition precedent" must be used for a notice requirement to act as a condition precedent.

In *Gemmy Indus. Corp. v. Alliance General Ins. Co.*, 190 F. Supp. 2d 915, 921 (N.D. Tex. 1998), however, the insurance policy in controversy did not explicitly have the words "condition precedent" for the notice requirement, but rather stated that notice must be given as soon as practicable. *Id.* The court found that a delay of more than one year before notifying the insurer was insufficient, regardless of the fact that the notice requirement was not specifically labeled as a "condition precedent." *Id.*

Similarly, in *Assicurazioni*, 935 F. Supp. at 887, the policy at issue required notice as soon as practicable, yet the insured notified its insurer almost seventeen months after the occurrence and two months after receipt of the original petition. The policy listed the notice requirements under the condition section of the policy, yet the terms did not explicitly state that the notice requirement was a "condition precedent" to coverage. Again, although the notice requirement was not specifically labeled as a "condition precedent," the court found that the delays violated the requirements set out in the policy. *Id.*

SingleEntry further urges that ThinkSpark had discretion to determine when the need for coverage may exist. SingleEntry cites *Employers Ins. v. Bodi-Wachs Aviation Ins. Agency, Inc.*, 39 F.3d 138 (7th Cir. 1994), to illustrate that the insured has discretion in determining when an insurer must be given notice. In *Bodi-Wachs*, the insured gave notice to its insurer directly after an amended pleading was filed against it for fraud and negligence. *Id.* Notably, the decision of the district court granting coverage to the insured did not demonstrate that the insured has discretion of when to provide notice, but that the insured fulfilled the requirements of the policy.

Alternatively, ThinkSpark had reason to believe that coverage would be needed when it failed to reach its deadline for SingleEntry's website on May 1, 2000. Furthermore, in June 2000, the chief executive officer of Think-Spark noted that litigation would likely result. Consequently, ThinkSpark had the obligation to notify St. Paul of possible litigation no later than June 2000, and its failure provide notice until September 2001 constituted a failure to provide the proper notice.

V.

SingleEntry argues that St. Paul had a duty to provide defense and pay the final judgment on behalf of ThinkSpark under article 21.55 of the Texas Insurance Code. SingleEntry is incorrect, because it is not making a first-party claim in this dispute. Under Article 21.55

5

§ 1(3), claims are defined as a first-party claim made by an insured or policyholder under an insurance policy or contract or by a beneficiary named in the policy or contract that must be paid by the insurer directly to the insured or beneficiary. An illustration of a first-party claim can be found in *Hartman v. St. Paul Fire & Marine Ins. Co.*, 55 F. Supp. 2d 600, 603 (N.D. Tex. 1998), showing that a first-party claim is an immediate direct diminution of the insured's assets, in contrast to a third-party claim, which goes through the first-party as a conduit.

SingleEntry's claim is not a first-party claim for damage suffered directly by the insured. Therefore, because ThinkSpark's policy was not a first-party insurance policy, Single Entry's third-party claim is not covered by article 21.55. In addition, SingleEntry is not the holder of the policy or a named beneficiary. Accordingly, SingleEntry does not meet the requirements of article 21.55, so summary judgment was properly awarded to St. Paul.

AFFIRMED.